UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| RANDY S. PETERS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 6:24-CV-11-REW |
| ) | |
| MARTIN O'MALLEY, *Acting* ) | OPINION & ORDER |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Randy S. Peters appeals the denial of his application for Supplemental Security Income Benefits ("SSI"). *See* DE 1. He moved for summary judgment following the Commissioner's answer. *See* DE 13. The Commissioner responded in opposition to the motion, requesting affirmance of the underlying Administrative Law Judge ("ALJ") decision, *see* DE 15, and Peters replied, *see* DE 16. The administrative record appears at DE 10 ("R." Administrative Transcript) as part of the Commissioner's answer. After reviewing the record, with particular emphasis on the limited portions Peters challenges, the Court finds the ALJ's determination supported by substantial evidence and compliant with Agency rules and regulations. Accordingly, the Court **DENIES** Peters's motion for summary judgment and affirms the ALJ's SSI denial.

I. **Relevant Background**

Peters applied for SSI on December 3, 2020, alleging disability beginning on November 1, 2017. *See* R. at 170. He alleged a slew of disabling conditions, including mobility challenges due to his use of a cane, PTSD, depression, heart impairments, a recent hip fracture, along with general knee and back impairments. *See* R. at 192. The agency denied his claim initially, *see* R. at 71–77, and again on reconsideration, *see* R. at 102–03, eventually leading to an administrative hearing

1

before ALJ Robert Bowling. *See* R. at 43–69. On January 24, 2023, in an 18-page opinion, Judge Bowling concluded that Peters was not "disabled" within the meaning of the Social Security Act. *See* R. at 19–37. The Appeals Council upheld the decision, *see* R. at 5, and this appeal ensued.

Judge Bowling's opinion tracked the standard five-step evaluation sequence laid out in 20 C.F.R. § 416.920. First, Judge Bowling concluded that Peters "has not engaged in substantial gainful activity since November 23, 2020." *See* R. at 21. Second, he concluded that Peters's skeletal spine disorders, coronary artery disease, right hip fracture, major depressive disorder, and anxiety disorders all qualified as severe impairments under 20 C.F.R. 416.920(c). *See* R. at 22. Despite these severe impairments, Judge Bowling concluded at step three that Peters "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *See* R. at 22–24. At the fourth step, Judge Bowling determined Peters's Residual Function Capacity ("RFC"). *See* R. at 25. He found that, based on Peters's impairments, he could perform "light work," except that he can "occasionally lift or carry twenty pounds," can "frequently lift or carry ten pounds," but cannot "climb ladders, ropes, or scaffolds." *See* R. at 25–26. Judge Bowling also limited Peters's RFC, among other ways, to "tasks performed in a work environment free of fast-paced production requirements, involving simple, routine, and repetitive tasks with only occasional workplace changes." *See id.* (also referencing limits on interaction). Lastly, Judge Bowling, after considering Peters's age, education, and RFC, determined that although Peters was unable to perform any past relevant work, *see* R. at 35, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *See* R. at 36. Judge Bowling cited roles such as product sorter, product mounter, and product assembler, which the Vocational Expert ("VE") testified as encompassing over 70,000 jobs in the national economy. *See* R. at 36–37. Based on consideration of the full record and

2

testimony from the VE, Judge Bowling concluded that Peters was not "disabled" under the Act and denied the sought benefits. *See* R. at 37.

Central to Peters's challenge, Judge Bowling, in reaching his conclusion, considered and found unpersuasive the assessment of Dr. Edd Easton-Hogg. A psychologist tasked by the Agency to assess Peters as part of his claim, Dr. Easton-Hogg examined Peters on September 15, 2021, and provided a report and opinion. *See* R. at 2341–48. His examination and assessment primarily concerned issues of Peters's mental health and cognitive functioning. Dr. Easton-Hogg noted that Peters reported use of mental health medication for over two decades and that anxiety, depression, and stress led to symptoms of hallucinations, a desire to avoid others, and feelings of being disparaged by the world. *See* R. at 2342. The assessment noted fairly standard routines on Peters's part. Peters reported normal eating habits, the ability to drive a car himself and shop alone, and the ability to use money well. *See id.* Dr. Easton-Hogg conducted a mental status exam. He noted that Peters could spell the word "world" backwards, could repeat serial threes backwards from 20, could calculate $1-.17, 4x7, and 5+8, and that Peters's "attention to task and concentration appeared adequate." *See id.* He further observed that "deficits were noted in immediate and delayed memory," but in the same paragraph reported that Peters could repeat up to a four-digit series of numbers forward and up to a two-digit series of numbers in reverse, remember his last meal and what he did over the weekend, and report three of three unrelated words after a ten-minute delay. *See id.* The assessment noted that Peters's "fund of knowledge appeared poor" in that he was able to name the president, but was unable to name the sunset direction, the past president, three large cities, the state capitol, or the number of weeks in a year. *See* R. at 2343. Dr. Easton-Hogg also found that Peters's capacity for abstraction was intact, that his speech flow was typical, and that his judgment and reality testing appeared adequate. *See id.*

3

Following his assessment, Dr. Easton-Hogg concluded that Peters suffered from major depressive disorder and recurrent, moderate, unspecified psychotic disorder. *See* R. at 2343. He then, addressing the paragraph B criteria, opined that Peters's capacity to understand and remember instructions, ability to sustain concentration, capacity to respond appropriately to supervisors, coworkers and the public, and his ability to tolerate stress and pressure of day-to-day employment were all impaired by his symptoms to a "marked" degree. *See* R. at 2344 ("Marked: There is serious limitation in this area. The ability to function is severely limited, but not precluded.").

In reaching his disability determination, Judge Bowling fully considered Dr. Easton-Hogg's assessment, both in isolation and in comparison to other medical evidence. *See* R. at 24, 28, 30–31, 33–34. Addressing Dr. Easton-Hogg's "marked" impairment opinions, Judge Bowling reasoned that the opinions were "not well supported" in that they were "nonspecific regarding the claimant's ability to perform particular work-related activities" and were "not well explained" because they lacked "consideration of [Peters's] whole record." R. at 34. Judge Bowling, critically, also found inconsistencies between Easton-Hogg's conclusions when compared with contemporaneous assessment notes (by him) and other objective evidence (from other providers and from non-medical sources) in the record. *See id.* Bowling noted, *e.g.*, that Easton-Hogg's marked impairment conclusions contradicted his finding that Peters's thought process was logical and intact. *See id.* Similarly, Easton-Hogg's findings stood at odds with other objective evidence in the record that described Peters as exhibiting a normal mood and affect. *See id.* (collecting sources). Ultimately, Judge Bowling found that Easton-Hogg's opinions were unpersuasive and at odds with the whole of the record.

4

Peters unsuccessfully sought review of Judge Bowling's decision from the Appeals Council. *See* R. at 5. The Council's denial rendered the ALJ's decision final for purposes of judicial review. Peters now seeks judicial review of the agency's determination under 42 U.S.C. § 405(g), particularly challenging the ALJ's treatment of Dr. Easton-Hogg's opinions in the rubric.

## II.   Standard of Review

Judicial review of an ALJ's disability determination, *see* 42 U.S.C. §§ 405(g), (h), is a limited and deferential inquiry, turning on the narrow question of whether substantial evidence supports the decision and whether the ALJ properly applied the relevant legal standards in reaching it. *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 496 (6th Cir. 2019) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence signals deference, not infallibility. A determination satisfies the standard when it is supported by "more than a scintilla of evidence but less than a preponderance." *Rogers*, 486 F.3d at 241. It requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In making the determination, the Court tunes its inquiry to the sufficiency of the evidence supporting the ALJ's analysis. It does not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Indeed, if substantial evidence could support either a favorable or an unfavorable determination, reversal is unwarranted. *See id.* at 713 ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). The Court's take on the merits has no bearing—it must affirm the agency decision, if support by substantial evidence, even if it may

5

have decided the case differently if standing in the ALJ's shoes. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011).

In making its determinations, the ALJ must faithfully heed agency rules and regulations. An ALJ's failure to properly apply and follow applicable law "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations."). For example, and as relevant to this appeal, SSA regulations define the applicable rubric an ALJ must follow in assessing and evaluating medical opinions. *See* 20 C.F.R. §§ 416.920c(a), (b)(2), (c)(1)–(5). The Court may remand a claim if it finds that the ALJ skirted these applicable requirements, and in doing so, prejudiced the plaintiff. *See Rabbers v. Comm'r of Soc. Sec.*, (6th Cir. 2009) (explaining that, even if the agency commits procedural error, remand in not appropriate unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.").

The ALJ conducts a five-step, heavily structured inquiry to determine a person's purported disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 416.920(a)(4). The ALJ first considers whether the claimant is performing substantial gainful activity. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 416.920(a)(4)(ii). Thirdly, the ALJ analyzes whether the claimant's impairments, individually or in combination, meet or equal an entry in the Listing of Impairments. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ defines the RFC and considers whether the claimant can perform past relevant work. *See Heston*, 245 F.3d at 534; 20 C.F.R. §

6

416.920(a)(4)(iv). The inquiry focuses on the type of relevant work, not the exact position previously held by the claimant. *See Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden of production shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 416.920(a)(4)(v). If, at any step, the ALJ determines that the claimant is not disabled, the analysis ends. *Id.* § 416.920(a)(4).

In assessing medical opinions and prior administrative medical findings, the ALJ may consider several factors including supportability, consistency, relationship with the claimant, specialization, and any other factors bearing on the analysis. *Id.* § 416.920c(c). The most important of these, however, are consistency and supportability. *Id.* § 416.920c(b)(2). As to these two factors, a claimant is entitled to an explanation of how the ALJ considered these factors for each individual medical opinion or administrative medical finding used in reaching the disability determination. *See id.* District courts apply the "articulation requirement literally," by requiring the ALJ to "provide a coherent explanation of their reasoning, clearly explain their consideration of the opinion and identify the evidence supporting their conclusions, and otherwise explain how they considered the supportability and consistency factors" as to each opinion. *See Oliver v. Kijakazi*, No. 3:22-CV-28-DCP, 2023 WL 2587487, at *4 (E.D. Tenn. Mar. 21, 2023) (internal quotations and citations omitted).

### III.   Analysis

Peters does not dispute the ALJ's determination at a particular step in the five-step framework. Rather, he aims his challenge at Judge Bowling's treatment of Dr. Easton-Hogg's assessment and opinion. He argues that Judge Bowling failed to sufficiently articulate the

7

supportability and consistency factors, as required by regulation. He takes issue with the depth of Judge Bowling's discussion of these factors, arguing that although he "did attempt to address" the two mandatory factors, his analysis should receive no credit because he offered no more than "mere conclusions" lacking sufficient explanation and support. *See* DE 13 at 9–10. These arguments fail. Judge Bowling properly articulated the supportability and consistency factors, even if not to a depth Peters would prefer, and substantial evidence supports the determination that Dr. Easton-Hogg's opinions were unpersuasive.

Judge Bowling's consideration of Dr. Easton-Hogg's opinion turned directly on the factors of supportability and consistency. As for supportability, Judge Bowling offered three reasons why he considered Dr. Easton-Hogg's opinion unsupported: (1) the opinions were non-specific regarding Peters's ability to perform particular work-related activities, (2) the conclusions (one rote sentence each) were not well explained, and (3) the conclusions did not evidence consideration of Peters's whole record. *See* R. at 34. Each of these calls supportability into question under § 416.920c. A medical source's failure to relate their opinions to specific work-related activities serves as a proper basis for supportability concerns. *See Bristow v. Comm'r of Soc. Sec.*, No. 2:17-CV-13769, 2018 WL 7017989, at *10 (E.D. Mich. July 27, 2018), *report and recommendation adopted*, No. 2:17-CV-13769, 2018 WL 6629481 (E.D. Mich. Dec. 19, 2018) ("Nor does [the medical source] explain Plaintiff's functional limitations: how long she can concentrate at one time, for example."). Likewise, Easton-Hogg made no attempt to link his opinions to any of the medical evidence or observations described in his assessment. A conclusory statement that Peters could not "tolerate stress" or "sustain concentration" falls flat without some evidentiary connection. *See Wroblesky v. Comm'r of Soc. Sec.*, No. 1:23-CV-232-JEG, 2023 WL 7131807, at *10 (N.D. Ohio Oct. 30, 2023) (finding lack of supportability where assessing psychiatrist based

8

opinion only on claimant's statements and no further medical evidence). Bare disability assertions, without reference to work-related limitations and objective medical evidence, erode supportability. The opinion's uniformity across each functional area gives further reason to pause. Dr. Easton-Hogg found "marked" impairment for each area assessed, again, without explanation or application of evidence. *See* R. at 2344. Across four discrete inquiries, presumably there would be differentiating characteristics justifying some articulation for the conclusion. But a finding of "marked" impairment on every functional area assessed, as here without explanation, reads more like an undifferentiated checkbox form than a nuanced assessment of Peters's mental faculties. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (ALJ properly gave little weight to form opinion where "the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence."). Thus, Judge Bowling's justifications on supportability "build an accurate and logical bridge" between the perceived deficits in the medical source and his conclusion. *Oliver*, 2023 WL 2587487, at *4.

Also affecting supportability, Dr. Easton-Hogg's opinions suffer from internal inconsistencies that Judge Bowling identified and relied on. Many of Easton-Hogg's assessment notes document relatively normal cognitive function for Peters. He noted that Peters's "task and concentration appeared adequate," that his "capacity for abstraction appeared intact," and that his "judgment and reality testing appeared adequate." *See* R. at 2342–43. To be sure, Dr. Easton-Hogg noted unspecified deficiencies in Peters's immediate and delayed memory. *See* R. at 2342. But that same paragraph notes *positive* findings on each of the queues used to reach that conclusion. *See id.* (noting that Peters was able to repeat up to a four-digit series of numbers forward and up to a two-digit series of numbers in reverse, report his last meal and what he did over the weekend, and report three of three unrelated words after a ten-minute delay).

9

This evidence fits awkwardly with Easton-Hogg's marked impairment findings: He found that Peters's capacity to understand and remember instructions was impaired, despite three exercises that demonstrated Peters's ability to recall words and numbers; He found that Peters's ability to cope with work-related stress was impaired, despite a finding that his "organization of thought processes appeared logical" and his "judgment and reality testing appeared adequate"; Finally, and perhaps in sharpest conflict, he opined that Peters's "ability to sustain concentration and have persistence to carry out simple instructions" were impaired despite a finding that his "task and concentration appeared adequate." These internal contradictions between assessment and opinion plausibly go to the heart of supportability. *See* 20 C.F.R. § 416.920(c)(1) ("[T]he more relevant the *objective medical evidence* and supporting explanations presented by a medical source are to *support the medical opinion*, the more persuasive the ALJ should find the medical opinion.") (emphasis added); *see also Oliver*, 2023 WL 2587487, at *7 (ALJ properly analyzed supportability factor in determining whether the purported "limitations were supported by, or grounded in, [] examination findings"); *Risner v. Berryhill*, No. 18-cv-01008-TMP, 2019 WL 1421766, at *4 (W.D. Tenn. Mar. 29, 2019) ("The court finds that the ALJ gave good reasons to give no weight to the opinion of Dr. Schwartz, as the opinion was inconsistent with the clinical findings from Risner's examinations. . . ."). At bottom, the Peters described in Easton-Hogg's factual assessment sounds quite different from the Peters described in the doctor's functional capacity opinions. Judge Bowling relied on that discrepancy—a valid reason for finding the opinion unsupported.

Dr. Easton-Hogg's opinions fare no better under the consistency factor. As Judge Bowling cited, several sources also involved in Peters's disability determination contradicted Dr. Easton-Hogg's marked impairment findings. *See* R. at 34; *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ's decision to discredit treating physician where the

10

bulk of other medical evidence contradicted the source's findings). For example, doctors for Disability Determinations Services, which examined Peters's claim in August 2022, opined that Peters could "understand and remember simple instructions and procedures" and "sustain attention, concentration, consistent effort, and adequate pace for simple tasks." *See* R. at 88; *see also* R. at 189 (field office interview, noting no perceived issues with understanding, coherency, concentrating, talking, or answering during a phone interview with Peters). He repeatedly cited particular contrary evidence documenting "good retained psychological abilities." R. at 31 (referencing "substantially normal" prior findings and other sources determining Peters's "social and adaptive abilities normal and intact"). Judge Bowling found these opinions properly supported and, relative to that of Easton-Hogg, comparatively persuasive. *See* R. at 32–33. Likewise, Judge Bowling referenced several treatment records, all reporting Peters as having normal mental function, mood, and affect. *See* R. at 290 ("alert and oriented to time, place, and person, normal mood, normal affect"); 428–29 (noting a lack of depression or anxiety and noting normal mood and affect); 310–16 (same).

Further still, Dr. Easton-Hogg's opinions appear to contradict relevant portions of Peters's own assessment of his impairments. *See* R. 256–57 (reporting that he reads daily, can follow oral instructions "pretty good," that he sometimes but not always struggles following written instructions like recipes, and that his attention span depends on what's being discussed); *see also Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 196 (6th Cir. 2020) ("We therefore agree with the district court that the inconsistencies between Rottmann's self-reported activities and the treating physicians' medical reports provide substantial evidence to support the ALJ's findings."). Additionally, Easton-Hogg yielded broad impairment findings, but Judge Bowling pointed to, and the record shows, particular inconsistent observations in each of the four areas. For example, Dr.

11

Eason-Hogg described Peters as having appropriate social maturity and responsibility, independence (in driving, shopping), the ability to handle money "well," and interaction with friends "routinely." The report described Peters's concentration and attention as adequate. While the Court could go on, as Judge Bowling did in explaining his consistency determination, it stops there. Judge Bowling sufficiently articulated his reasoning, citing ample sources in the record to support his conclusions (buttressed by citation to no less than eight comparative sources) relative to the consistency factor, both as a matter of internal and external comparison. *See Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-551-DJH-CHL, 2022 WL 798035, at *3 (W.D. Ky. Mar. 15, 2022) (noting that the ALJ must rely on other medical evidence in the record in finding that an opinion is unsupported or inconsistent). On review, the Court's role ends there. *See Griffin v. Kijakazi*, No. 2:22-CV-57-DCP, 2023 WL 3573734, at *7 (E.D. Tenn. May 19, 2023) (the Court on review does not weigh supportability and consistency; it looks only to "whether the ALJ sufficiently articulated those factors."). The analysis reasonably supports the determination, passing § 405 substantiality muster.

Peters repeatedly emphasizes Dr. Easton-Hogg's status as an Agency-hired mental health expert, insinuating that his relationship with the Agency calls for a closer or different approach. *See* DE 13 at 6–7 ("[H]ad the ALJ relied on the Agency's own examining mental health expert, the entire outcome of the case would have been different."), 12 ("Dr. Easton-Hogg was hired by Social Security. Therefore, he was not only a mental health expert, but he was an expert in disability evaluation."). The Agency's post-2017 regulations pull any teeth from this argument. For claims filed on or after March 17, 2017 the Agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a); *see also*

12

*Lewis-Johnson v. Kijakazi*, No. 1:20-CV-1260, 2022 WL 952692, at *6 (N.D. Ohio Mar. 30, 2022) (discussing the change). Rather, the Agency will consider all medical opinions or prior administrative findings "together, using all the factors listed," with a special emphasis on supportability and consistency. *See id.* Thus, that Dr. Easton-Hogg was hired by the Agency to conduct his examination and assessment has no bearing on the sufficiency of Judge Bowling's analysis. His opinion, like all other medical and administrative sources, falls all the same under the supportability and consistency rubric Judge Bowling followed.

Peters's arguments miss the mark. Judge Bowling sufficiently articulated the required supportability and consistency factors, and substantial evidence supported his determination on both fronts. The basis for appeal fails, leaving nothing further for the Court to assess.[1]

## IV. Conclusion

The Court **DENIES** DE 13, Peters's motion for summary judgment, and **AFFIRMS** the Agency decision under sentence four of 42 U.S.C. § 405(g). The Court will enter a separate judgment.

This the 10th day of December, 2024.



Signed By:
*Robert E. Wier*
United States District Judge

---

[1] Obviously, the imbedded 12.04 listing argument, dependent as it is on Easton-Hogg's opinions carrying the day, fails.